# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 16, 2005      Decided November 18, 2005

No. 04-1196

GRASSROOTS RECYCLING NETWORK, INC.,
PETITIONER

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND
MICHAEL O. LEAVITT, ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENTS

———

On Petition for Review of a Final Rule of the
Environmental Protection Agency

———

*Kira E. Loehr* argued the cause for petitioner. With her on the briefs was *Lee Cullen.*

*Thomas A. Lorenzen*, Attorney, U.S. Department of Justice, argued the cause for respondents. On the brief were *John C. Cruden*, Assistant Attorney General, and *Ammie Roseman-Orr*, Attorney.

*Barry S. Shanoff* and *David S. Biderman* were on the brief for *amicus curiae* National Solid Wastes Management Association, et al. in support of respondent.

Before: GINSBURG, *Chief Judge*, and BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*:  The Environmental Protection Agency promulgated a rule that allows the director of an approved state landfill permitting program to issue research, development, and demonstration permits granting variances from certain criteria set by the EPA for sanitary landfills. *See* Research, Development, and Demonstration Permits for Municipal Solid Waste Landfills, 69 Fed. Reg. 13,242 (Mar. 22, 2004) (RD&D Rule).  GrassRoots Recycling Network, Inc. challenges the rule as exceeding the agency's authority under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 *et seq*.  We dismiss the petition because GrassRoots does not have standing to seek review.

## I. Background

The RCRA establishes a comprehensive federal program to regulate the handling and disposal of solid waste.  As part of this program, the statute requires the EPA to "promulgate regulations containing criteria for determining which facilities shall be classified as sanitary landfills and which shall be classified as [prohibited] open dumps."  42 U.S.C. §§ 6943(a)(3), 6944(a)-(b).  Under those regulations a municipal solid waste landfill (MSWLF) must maintain a certain level of run-on control, 40 C.F.R. § 258.26(a)(1), and "install a final cover system that is designed to minimize infiltration and erosion," *id.* § 258.60(a).

The EPA requires most MSWLFs to be operated as "dry tombs," that is, with the level of liquid in the landfill minimized in order to slow the process of biodegradation and thereby to

reduce the production of gas. National Emission Standards for Hazardous Air Pollutants: Municipal Solid Waste Landfills, 67 Fed. Reg. 36,460, 36,462 (May 23, 2002). An MSWLF that uses liquid in order to increase the rate of biodegradation is known as a "bioreactor." *Id.* The EPA prohibits the creation of bioreactors by banning, in most instances, the addition of liquid waste into any MSWLF. 40 C.F.R. § 258.28(a)-(b).

The States are responsible for enforcing adherence to the EPA's minimum criteria for landfills. The RCRA contemplates each State will develop a "solid waste management plan[]," subject to the approval of the EPA, 42 U.S.C. §§ 6942(b), 6947(a)-(b), which approval will not be forthcoming unless the plan provides for closing all "open dumps," *id.* § 6943(a)(3).

The RCRA also instructs the EPA to:

> conduct, and encourage ... appropriate ... authorities ... [to] promote the coordination of, research, investigations, experiments ... and studies relating to ... the development and application of new and improved methods of collecting and disposing of solid waste.

*Id.* § 6981(a)(6). Pursuant to this instruction, the EPA issued the RD&D Rule, hoping thereby "to stimulate the development of new technologies and alternative operational processes for the disposal of municipal solid waste." RD&D Rule, 69 Fed. Reg. at 13,243. The rule allows the director of an approved state program to issue an RD&D permit for an MSWLF as to which "the owner or operator proposes to utilize innovative and new methods" of disposal. 40 C.F.R. § 258.4(a). Such a permit may authorize the owner or operator to use a landfill design that does not conform to the usual criteria for run-on control systems, *id.* § 258.26(a)(1); the requirements for final cover, *id.* § 258.60(a)(1)-(2), (b)(1); and the prohibition on adding liquids,

*id.* § 258.28(a), but only if the permit includes "terms and conditions at least as protective as the criteria [for MSWLFs] to assure protection of human health and the environment," *id.* § 258.4(c).

GrassRoots petitions for review of the RD&D Rule, which it claims the EPA had no authority to issue. In particular, GrassRoots argues the EPA violated the RCRA by delegating to the States the "authority ... to implement the [RD&D] permit process" and "to waive certain national criteria" for sanitary landfills.

## II. Standing

Under Article III of the Constitution of the United States, an association, such as GrassRoots,

> has standing to sue on behalf of its members only if (1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit.

*Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977)). Because, as we conclude below, no member of GrassRoots has standing to sue in his or her own right, GrassRoots lacks associational standing and its petition must be dismissed.

The "irreducible constitutional minimum of standing" has three elements: (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560-61 (1992).  GrassRoots bears the burdens of production and of proof:  It "must support each element of its claim to standing by affidavit or other evidence ....  Its burden of proof is to show a substantial probability," *Sierra Club*, 292 F.3d at 899, that the RD&D Rule causes at least one of its members an injury that is "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical," *Defenders of Wildlife*, 504 U.S. at 560.

In an attempt to meet this burden, GrassRoots attached to its opening brief the affidavits of two members, each describing the injuries he or she claims to have suffered as a result of the RD&D Rule.  Each member states that he or she lives approximately 1.5 miles from a landfill in a Wisconsin town.  Wisconsin has proposed, but not adopted, a rule that would allow it to issue permits under the RD&D Rule.  *See* Order of the State of Wisconsin Natural Resources Board Amending and Creating Rules, WA-47-04, *available at* http://www.dnr.state.wi.us/org/aw/wm/solid/landfill/500rev/grnsheet1200rule.pdf (proposing rule). Angela Petersen states: "If I had known that the Metro Landfill [in Franklin, Wisconsin] could be converted into a bioreactor ... I would not have purchased my property, or I certainly would have paid considerably less than what I paid, because of the potential problems that can now occur."  Robin Fate similarly states he "might not have" purchased his property had he known the landfill near his home in Sarona, Wisconsin might become a bioreactor.

Neither affidavit is evidence of the "actual or imminent" injury in fact required for standing to sue.  Each affiant states that at the time of purchase his or her home would have been worth less to him or her, not that the home in fact is worth less, due to the RD&D Rule.  In other words, GrassRoots fails to assert, much less to offer evidence, that the fair market value of

any member's home is less than it would be but for the rule.

Insofar as the affidavits could be read to suggest the rule will cause the market value of the affiants' homes to decline in the future, the injury is conjectural and not imminent. *See La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1383 (D.C. Cir. 1996) (no standing where injury would not occur unless State asked EPA to delegate authority, EPA approved state program despite creation of allegedly unlawful regulatory gap, and gap affected area in which plaintiff's members lived). Whether the Franklin or the Sarona landfill will be converted into a bioreactor depends upon whether third parties take several specific steps. First, the Wisconsin Department of Natural Resources must approve the proposed (or some alternative) rule for issuing RD&D permits. Next, the EPA must approve Wisconsin's proposal. *See* 42 U.S.C. § 6947(a). Thereafter, the owner of the landfill must apply for a permit, and the Wisconsin Department of Natural Resources must, after "hold[ing] a public hearing to solicit public reaction and recommendations," grant "the proposed permit application." 40 C.F.R. § 256.63(a). Even then, the fair market value of the affiants' homes might not decline; recall that each RD&D permit must be as protective of human health and the environment as would be a non-RD&D permit. *See id.* § 258.4(c).

This "multi-tiered speculation," *La. Envtl. Action Network*, 87 F.3d at 1383, instances events that, although by no means impossible, are at this time neither actual nor imminent but wholly conjectural. It is hardly surprising, therefore, that GrassRoots has offered no evidence of an actual decline in the fair market value of any member's home.

### III. Conclusion

In sum, because nothing in the record shows the RD&D

Rule has caused or is about to cause any member an injury in fact, GrassRoots does not meet the minimum constitutional requirements for associational standing. Its petition is, therefore,

*Dismissed.*