# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 15, 2008         Decided July 25, 2008

No. 07-1065

DOMINION TRANSMISSION, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

PSEG ENERGY RESOURCES & TRADE LLC *ET AL.*,
INTERVENORS

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Catherine E. Stetson* argued the cause for the petitioner. *J. Patrick Nevins*, *Jessica L. Ellsworth* and *Margaret H. Peters* were on brief.

*Holly E. Cafer*, Attorney, Federal Energy Regulatory Commission, argued the cause for the respondent. *Cynthia A. Marlette*, General Counsel, and *Robert H. Solomon*, Solicitor, Federal Energy Regulatory Commission, were on brief.

*Kenneth T. Maloney* argued the cause for the intervenors.

Before: HENDERSON and ROGERS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In June 2001 and April 2005, Dominion Transmission, Inc. (Dominion)—a major provider of natural gas transportation and storage services in six Mid-West and Mid-Atlantic states—along with the majority of its customers, submitted two proposed settlement agreements to the Federal Energy Regulatory Commission (FERC or Commission) for its approval.[1] Both agreements provided, *inter alia*, for a fixed set of rates and fuel retention percentages for Dominion's services for a fixed time period. They also required Dominion to file an annual report with FERC containing sixteen discrete items about Dominion's fuel accounting practices. FERC reviewed and approved both of the proposed settlements, ultimately finding them "fair and reasonable and in the public interest." Dominion Transmission, Inc., 96 F.E.R.C. ¶ 61,288, at 62,089 (Sept. 13, 2001); Dominion Transmission, Inc., 111 F.E.R.C. ¶ 61,285, at 62,237 (May 27, 2005). Just seven months after it approved the second settlement, however, FERC—at the request of Dominion's customers—ordered Dominion to supplement its annual reports with additional information about its fuel accounting practices. For the reasons set forth below, we believe FERC's order is invalid under the *Mobile-Sierra* doctrine and we therefore grant Dominion's petition for review.

## I.

On September 29, 2000, Dominion filed a request with FERC under section 4 of the Natural Gas Act (NGA), Pub. L. No. 75-688, § 4, 52 Stat. 821, 822 (1938) (codified as amended

---

[1]As an interstate transporter of natural gas, Dominion is regulated by FERC. *See* 15 U.S.C. § 717(b).

at 15 U.S.C. § 717c), to increase the rates for its natural gas transportation and storage services.[2] *See* Annual Transportation Cost Rate Adjustment Filing, No. RP00-632-000, at 1 (Sept. 29, 2000). Several of Dominion's customers protested the proposed rate increase. *See, e.g.*, Mot. to Intervene & Protest of City of Richmond, Va., No. RP00-632-000, at 1 (Oct. 11, 2000). After nine months of negotiations, on June 22, 2001, Dominion, its customers and other interested parties submitted a proposed settlement agreement to FERC. *See* Stipulation & Agreement (2001 Settlement), Nos. RP00-632-000 et al., §§ 2.5-2.9 (June 22, 2001). On September 13, 2001, FERC approved the Settlement without modification, finding it "fair and reasonable and in the public interest." Dominion Transmission, Inc., 96 FERC at 62,089. Under the 2001 Settlement, Dominion agreed not to seek any rate increase under section 4 of the NGA before July 1, 2003. 2001 Settlement § 11.2. Dominion also agreed to include in its next section 4 filing a report containing sixteen types of information "detailing the pipeline's actual System Gas Requirements . . . and gas retained" during the relevant time periods. *Id.* § 11.4.[3] In the event that Dominion did not make

---

[2]Section 4 of the NGA provides, in relevant part, that "[w]henever any such new [rate] schedule is filed [by a pipeline] the Commission shall have authority, either upon complaint of any State, municipality, State commission, or gas distributing company, or upon its own initiative without complaint . . . to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service." 15 U.S.C. § 717c(e).

[3]The sixteen items are set forth in section 16.5 of the "General Terms and Conditions" which is included in Appendix B to the 2001 Settlement. Section 16.5 provides that Dominion's "report shall contain the following information:"

a section 4 filing by the close of the rate moratorium period—that is, by June 30, 2003—Dominion agreed to provide the same sixteen items to FERC in a separate "informational filing" (Fuel Report) for the 12-month period ending on March 31, 2003. *Id*. § 11.6. Dominion also agreed to provide the Fuel Report on June 30 of each year until its next section 4 filing. *Id.* The 2001 Settlement also provided for a set of fixed fuel

---

(1) the volume of fuel purchased; (2) the cost of fuel; (3) the source from which Pipeline purchased the fuel; (4) the amount of fuel retained by service; (5) actual fuel usage by function and station; (6) information detailing any adjustments made to inventory related to storage gas losses; (7) the fuel requirements of each third-party pipeline transporter; (8) the month-end balance in Account No. 117.4 attributable to Non-Purchased Supply in the same format provided in [Dominion's] Annual TCRA filing made in Docket No. RP00-632; (9) System Lost and Unaccounted For Gas broken out by month and function; (10) aggregate customer storage inventory, by month, and physical storage inventory levels, by month; (11) aggregate injections and withdrawals, by month and broken out by customer activity and physical activity; (12) monthly values used for storage valuation purposes pursuant to the Valuation Method; (13) monthly balances in system gas accounts (as provided annually in FERC Form 2); (14) cumulative MCS parks and loans, by month; (15) monthly breakdown of a) exchange imbalance volumes, b) transportation imbalance volumes, and c) net storage volumes and (16) throughput and billing determinant information, by month, with an explanation of any billing determinant changes.

2001 Settlement App. B, Gen. Terms & Conditions § 16.5.

retention percentages to remain in effect until at least July 1, 2003.[4]  2001 Settlement § 11.1.

Dominion filed the required Fuel Report on June 30, 2003 and again on June 30, 2004.  *See* Informational Fuel Report, No. RP00-632-012 (June 30, 2003); Informational Fuel Report, No. RP00-632-013 (June 30, 2004).  It is undisputed that these two Fuel Reports contained each of the sixteen items required under the 2001 Settlement.  *See, e.g.*, Order Accepting Fuel Reports

---

[4]When a pipeline transports natural gas, some of the gas becomes lost or is used by the pipeline to fuel compressor stations.  To recover for the cost of lost and spent fuel, the pipeline establishes a generally applicable "fuel retention percentage"—approved by FERC—whereby it retains a small percentage of the gas sent through the pipeline.  *See generally* Fuel Retention Practices of Natural Gas Cos., 120 F.E.R.C. ¶ 61,255 (Sept. 20, 2007).  A pipeline must permit its customers to select this "recourse" fuel retention percentage; *see* Natural Gas Pipeline Negotiated Rate Policies and Practices, 104 F.E.R.C. ¶ 61,134, at 61,482 (July 25, 2003); however, a pipeline may also negotiate specific fuel retention rates with individual customers, *see Interstate Natural Gas Ass'n of Am. v. FERC*, 285 F.3d 18, 54 (D.C. Cir. 2002).  The negotiated fuel retention percentage may fall below, at or above the recourse fuel retention percentage.  *Id.*  "[W]hen a pipeline enters into a negotiated rate transaction, it assumes the risk of under-recovery of its costs, as well as the benefit of negotiating rates higher than those for recourse rate shippers.  Therefore, when [a pipeline] negotiates its surcharge and fuel retainage, it must assume any under-recovery of costs from negotiated shippers in order to ensure that its recourse shippers are no worse off due to the negotiation of rates with individual shippers."  Columbia Gas Transmission Corp., 92 F.E.R.C. ¶ 61,080, at 61,340 (July 27, 2000) (footnote omitted).  The pipeline must separately account for negotiated fuel retention rates and "protect recourse rate customers from subsidizing negotiated rate customers."  *Id.*

Subject to Conditions, Nos. RP00-632-013, RP00-632-017, at 4 (Dec. 21, 2005) (Conditions Order). Based on information contained in Dominion's 2004 Fuel Report, KeySpan Corp.—a Dominion recourse customer—and its subsidiaries (collectively KeySpan) became concerned that Dominion's recourse customers may have been subsidizing certain of its negotiated-rate customers. *See* Mot. to Intervene & Comments, Nos. CP04-370 et al., at 3 (July 12, 2004) (2004 KeySpan Mot.); *see also supra* note 4. KeySpan filed a motion with FERC asking, *inter alia*, that it require Dominion to disclose three additional pieces of information about its fuel retention practices which were not required under the 2001 Settlement but which KeySpan believed were necessary to determine whether subsidization had in fact occurred. *See* 2004 KeySpan Mot. 5.[5]

In the fall of 2004, before FERC had acted on KeySpan's motion, the New York Public Service Commission (PSCNY) notified Dominion that it intended to file a complaint under section 5 of the NGA, 15 U.S.C. § 717d, challenging Dominion's rates as excessive.[6] *See* Offer of Settlement &

---

[5]KeySpan requested, *inter alia*, that FERC "require [Dominion] . . . to identify any negotiated rate fuel collections or credits included in its [2004] Fuel Report . . . [and] to identify both amounts of fuel collected and credited pursuant to negotiated rate agreements in future Fuel Reports." 2004 KeySpan Mot. 5.

[6]Section 5 of the NGA provides, in relevant part:

> Whenever the Commission, after a hearing had upon its own motion or upon complaint of any State, municipality, State commission, or gas distributing company, shall find that any rate, charge, or classification demanded, observed, charged, or collected by any natural-gas company in connection

Explanatory Statement, Nos. RP97-406-033 et al., at 5. Dominion and PSCNY jointly proposed a second settlement agreement which was ultimately accepted—or, in some cases, not opposed—by the majority of Dominion's customers. *See id.* at 1; Stipulation & Agreement (2005 Settlement), Nos. RP97-406-003 et al., App. A (April 1, 2005). Under the 2005 Settlement, Dominion agreed to lower its rates, totaling approximately $49 million per year ("a $40 million per year reduction in transportation rates and a reduction in the storage fuel retention percentage of $9 million per year") in rate relief for Dominion's customers. Dominion Transmission, Inc., 111 F.E.R.C. at 62,236. The parties also agreed to a five year "Moratorium Period" during which the parties were prohibited from seeking any changes to Dominion's "generally applicable transportation or storage rates" or fixed fuel retention percentage under sections 4 and 5 of the NGA. 2005 Settlement § 4.2. The 2005 Settlement did not, however, preclude FERC from initiating a section 5 proceeding against Dominion so long as

---

with any transportation or sale of natural gas, subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory, or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order . . . .

15 U.S.C. § 717d(a).

FERC acted "*on its own volition*." *Id.* § 4.6 (emphasis added).[7] Moreover, the 2005 Settlement continued the 2001 Settlement's requirement that Dominion file an annual Fuel Report each June 30th until Dominion's next section 4 filing sometime after the end of the Moratorium Period in 2010. *Id.* § 4.3. The 2005 Settlement provided that it was "an integrated package" and that "[n]one of the terms . . . [we]re agreed to without each of the others." *Id.* § 7.1. On May 27, 2005, FERC approved the 2005 Settlement, finding it "fair and reasonable and in the public interest." Dominion Transmission, Inc., 111 F.E.R.C. at 62,236.

On June 30, 2005, Dominion filed its 2005 Fuel Report. *See* Fuel Report (2005 Fuel Report), No. RP00-632-017 (June 30, 2005). As with the earlier Reports, it is undisputed that Dominion's 2005 Fuel Report contained each of the specified 16 items of information. *See, e.g.*, Conditions Order ¶ 11. About this time, KeySpan asserts, it became aware from postings on Dominion's website that Dominion was "waiving" a significant quantity of fuel for certain of its customers. KeySpan Br. 9.[8] KeySpan filed a second motion with FERC on July 12, 2005, requesting that it "require Dominion to modify its Fuel Report"

[7]Section 4.6 provides: "This Article IV shall not purport to preclude the Commission from initiating an NGA Section 5 proceeding on its own volition."

[8]If a natural gas shipment does not require the use of any fuel during transportation (e.g., when no compressors are used during the shipment), a pipeline may "waive" a portion of the general fuel retention percentage to reflect the savings. *See, e.g.*, Columbia Gas Transmission Corp., 101 F.E.R.C. ¶ 61,378, at 62,573-74 (Dec. 26, 2002). The pipeline may not, however, ordinarily waive the portion of the fuel retention percentage covering lost and unaccounted-for fuel. *Id.*

to include three additional pieces of information relating to Dominion's fuel retention practices. Request of the KeySpan Delivery Companies for Further Information, No. RP00-632-000, at 4 (July 12, 2005) (2005 KeySpan Mot.).[9]

After considering KeySpan's motions, FERC found "under section 5 of the NGA" that the 2005 Settlement was "unjust and unreasonable insofar as it fails to require [the] additional information" requested by KeySpan. *See* Conditions Order ¶ 12. FERC directed Dominion to re-file its 2004 and 2005 Fuel Reports with the additional information and to include the additional information in all future Fuel Reports. *See id.* ¶¶ 13-14. FERC reasoned that "granting KeySpan's request for more detailed information in Dominion's Fuel Reports would enhance the transparency of Dominion's transactions, and assure all parties and the Commission that there is no cost-shifting or subsidization on Dominion's system." *Id.* ¶ 11. FERC explained that although Dominion's fuel retention percentage was fixed during the Moratorium Period, the additional information was "important . . . because of its potential use in any subsequent fuel retention proceeding after the moratorium expires." *Id.*

Dominion requested rehearing. *See* Request for Reh'g, Nos. RP00-632-013, RP00-632-017 (Jan. 20, 2006). In its request,

----

[9]KeySpan "request[ed] that the Commission require Dominion to modify its Fuel Report to identify (1) the quantity of fuel waived by Dominion by function, (2) the quantity of fuel collected or credited under negotiated rate agreements that reflect negotiated fuel retention percentages, and (3) the amounts of fuel that should be reflected in Dominion's fuel retainage accounts as a result of the Commission's orders that require Dominion to credit fuel retainage levels to its retainage accounts for any negotiated transaction." 2005 KeySpan Mot. 4.

Dominion argued, *inter alia*, that FERC (1) "erred in failing to apply the *Mobile-Sierra* doctrine[10] to KeySpan's request to abrogate the terms of the . . . 2005 Rate Settlement;" (2) "erred in deviating from its policy supporting the sanctity of settlements;" (3) "violated section 5 of the NGA in ordering [Dominion] to modify . . . its tariff without adequately demonstrating . . . [that Dominion's t]ariff is unjust and unreasonable and that the Commission's proposed change is just and reasonable;" and (4) "erred . . . by retroactively applying the ordered changes to [Dominion's] June 30, 2004 and June 30, 2005 Fuel Reports." *Id.* at 5 (footnote added). FERC acknowledged that Dominion's last assignment of error was correct and modified its order so that Dominion was required to disclose the additional information prospectively only. *See* Order on Reh'g, Compliance Filing & Fuel Report, Nos. RP00-632-019 et al., ¶¶ 23-24 (Jan. 19, 2007) (Rehearing Order). FERC rejected each of Dominion's other arguments. On March 14, 2007, Dominion timely filed a petition for review pursuant to 15 U.S.C. § 717r(b).

## II.

### A. Standing

FERC opens by challenging Dominion's standing to challenge its order to provide the additional information. "Pursuant to § 19(b) of the NGA, 15 U.S.C. § 717r(b), only a party that is 'aggrieved' by an order issued under the Act may obtain judicial review thereof." *El Paso Natural Gas Co. v. FERC*, 50 F.3d 23, 26 (D.C. Cir. 1995). " 'A party is aggrieved within the meaning of [the NGA] if it can establish both the constitutional and prudential requirements for standing.' " *Wis.*

---

[10]*See* discussion *infra* page 13.

*Pub. Power, Inc. v. FERC*, 493 F.3d 239, 267 (D.C. Cir. 2007) (quoting *Pub. Util. Dist. No. 1 of Snohomish County v. FERC*, 272 F.3d 607, 613 (D.C. Cir. 2001)). In order to establish constitutional standing, " 'a plaintiff must[, *inter alia*,] show . . . it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). According to the Commission, Dominion's petition does not allege that Dominion has suffered a "concrete and particularized" injury. FERC Br. 16. Specifically, FERC argues that Dominion's petition "leaves unclear whether its alleged injury derives from: 1) the precedent set by the Commission's addition of filing requirements to the tariff or Settlements; 2) the filing requirement itself; 3) the potential for future changes to Dominion's rates based upon the informational filings; or something else." *Id.* at 15–16. We, however, do not share FERC's confusion. Dominion's opening brief makes clear that it has been "aggrieved" by FERC's "altering the terms of its Settlement Agreements." Dominion Br. 23. FERC's alteration of Dominion's obligations under the 2001 and 2005 Settlements suffices to establish standing under the NGA. Indeed, it would be difficult to see how FERC could order Dominion to disclose private data about its operations and that Dominion could nonetheless lack standing to challenge the order. *Cf. Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) ("In many if not most cases the petitioner's standing to seek review of administrative action is self-evident . . . . In particular, if the complainant is 'an object of the action . . . at issue'—as is the case usually in review of a rulemaking and nearly always in review of an adjudication—there should be 'little question that the action or inaction has caused him injury . . . .' " (quoting

*Lujan*, 504 U.S. at 561–62)).[11]

*B.  Standard of Review*

We review the Commission's interpretation of the 2001 and 2005 Settlements under "a variation of the now familiar 'two-step' first performed by the United States Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984)." *Ameren Servs. Co. v. FERC*, 330 F.3d 494, 498 (D.C. Cir. 2003). "[F]irst, [we] consider *de novo* whether the settlement agreement unambiguously addresses the matter at issue. If so, the language of the agreement controls for we 'must give effect to the unambiguously expressed intent of' the parties." *Id.* (quoting *Chevron*, 467 U.S. at 843) (citation omitted). "If the settlement agreement is ambiguous, however, we then examine the Commission's interpretation of that agreement 'under the deferential 'reasonable' standard.' " *Id.* (quoting *Cajun Elec. Power Coop. v. FERC*, 924 F.2d 1132, 1136 (D.C. Cir. 1991) (footnote omitted)).

*C.* Mobile-Sierra *Doctrine*

"Under the *Mobile-Sierra* doctrine[12] FERC may abrogate or

---

[11]FERC also argues that, to the extent Dominion asserts injury based on FERC's future use of the additional information in a subsequent rate proceeding or the potential precedential effect of FERC's action, Dominion's petition is not ripe for review. *See* FERC Br. 18-19. This argument, however, is based on a misreading of Dominion's position. As we have noted, Dominion's asserted injury is based on FERC's alteration of the terms of the 2005 Settlement Agreement.

[12]The *Mobile-Sierra* doctrine is derived from the Supreme Court's companion cases *United Gas Pipe Line Co. v. Mobile Gas Service Corp*., 350 U.S. 332 (1956), and *Federal Power Commission v. Sierra*

modify freely negotiated private contracts that set firm rates or establish a specific methodology for setting the rates for service . . . only if required by the public interest." *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 14 (D.C. Cir. 2002) (citing *Texaco Inc. v. FERC*, 148 F.3d 1091, 1095 (D.C. Cir. 1998)) (footnote added). The doctrine requires FERC to "presume that the rate set out in a freely negotiated . . . contract meets the 'just and reasonable' requirement imposed by law. The presumption may be overcome only if FERC concludes that the contract seriously harms the public interest." *Morgan Stanley Capital Group Inc. v. Pub. Util. Dist. No. 1 of Snohomish County*, 128 S. Ct. 2733, 2736 (2008). Generally, this requires "a finding that the existing rate 'might impair the financial ability of [a] public utility to continue its service,' or that the rate would 'cast upon other consumers an excessive burden, or be unduly discriminatory,' [or that there are] other 'circumstances of unequivocal public necessity.' " *Wis. Pub. Power*, 493 F.3d at 271 (quoting *Fed. Power Comm'n v. Sierra Pac. Power Co.*, 350 U.S. 348, 355 (1956); *Permian Basin Area Rate Cases*, 390 U.S. 747, 822 (1968)).

In its Rehearing Order, FERC concluded that the *Mobile-Sierra* doctrine was inapplicable for three reasons. First, FERC explained that the Conditions Order "has not *modified* the terms of the 2005 Settlement by directing [Dominion] to add more information items to the annual Fuel Reports." Reh'g Order ¶ 14 (emphasis added). FERC explained that "[n]one of the 16 enumerated informational filing requirements . . . is modified or eliminated. The Commission has merely directed that . . . the information to be submitted to the Commission each June 30 be *supplemented* to include additional information the Commission

---

*Pacific Power Co.*, 350 U.S. 348 (1956).

finds would be helpful." *Id.* (emphasis added); *see also id.* ¶ 15 ("The December 21, 2005 Order does not modify that settled list of information [i.e, the Fuel Report]; it will still be filed. Rather, the Commission's order simply adds to it.").[13] We find this argument cannot withstand *Chevron* review under step one. During the "intensive" settlement negotiations, Notification of Settlement Filing, No. RP00-632-003, at 1, the parties precisely defined the information to be contained in Dominion's annual Fuel Reports. *See, e.g.*, 2001 Settlement § 11.4 ("D[ominion] shall be required to make an informational filing . . . as described in . . . Section 16.5 attached on Appendix B."); *see also supra* note 3. We find no ambiguity in this language and therefore decline to defer to FERC's suggestion that it can "add[] to" or "supplement" a contractual obligation without at the same time modifying it. *See, e.g.*, Oxford English Dictionary 952 (2d ed. 1989) ("modify" means, in part, "make partial or minor changes in; to change (an object) in respect to some of its qualities; to cause to vary without radical transformation"); Webster's Third New Int'l Dictionary 1452 (1993) ("modify" means "make minor changes in form or structure of: alter without transforming").

Second, FERC suggests that the Conditions Order does not implicate *Mobile-Sierra* because it is consistent with the "purpose and intent" of the Settlements. Reh'g Order ¶ 15. There are two variations on this theme. First, FERC argues that so long as it does not change " 'the terms of primary service for which the parties have bargained . . . [its order] does not *modify*

---

[13]FERC noted that "[r]ather than directing this information be reported on an ad hoc basis in a filing separate from the settlement's informational reports, as a matter of efficient administration, the order . . . requires their inclusion in the same report in which the other settled information items are reported." Reh'g Order ¶ 15.

[the] contracts, even if it *affects* them.' " FERC Br. 25 (quoting *Am. Gas Ass'n v. FERC*, 428 F.3d 255, 263 (D.C. Cir. 2005) (emphases added)).[14] According to FERC, "[t]he [primary] bargain struck by the settling parties relates to the rates . . . . Requiring additional information to be submitted does not, in and of itself, change those settled rates." Reh'g Order ¶ 15; *see also* FERC Br. 27. FERC claims that its "reasonabl[e]" interpretation of the Settlements is entitled to deference under *Chevron*. FERC Br. 20, 23. We disagree. Even granting that the "primary" purpose of the 2005 Settlement was to establish Dominion's transportation and storage service rates, the 2005 Settlement made clear that the information contained in the Fuel Report was also an integral part thereof. Indeed, the 2005 Settlement specifies that it is "an integrated package" and that "[n]one of the terms of the Settlement [is] agreed to without each of the others." 2005 Settlement § 7.1.

FERC's second variation on the theme, its "intent of the parties" argument, fares no better. FERC argues that "[t]he

---

[14]In *American Gas* we upheld a FERC regulation authorizing "shippers to segment their capacity and use any receipt and delivery point within the zone for which they pay reservation charges." 428 F.3d at 261. The regulation "created a secondary market for [pipeline] capacity." *Id.* "Various pipelines . . . argue[d] that FERC's policy effectuated an increase in shippers' delivery point entitlements . . ., thereby modifying existing contracts" and triggering *Mobile-Sierra*. *Id.* at 262. We disagreed, explaining that the regulation directly affected only the secondary market for pipeline capacity—"a basis not covered by the contract[s]" and outside their domain. *Id.* at 263. "Because the terms of primary service for which the parties ha[d] bargained remain[ed] unchanged," we held that the regulation did not alter the contracts. *Id.* Not so with the Settlements. The Conditions Order "affected" the Settlements by "altering" the content of the Fuel Reports.

*purpose and intent* in requiring information to be filed [i.e., the 16 items] . . . was to provide a minimum set of information to be used to determine whether section 5 action adjusting the settled fuel retention percentages would be appropriate . . . . The purpose clearly was not to blind the Commission to additional information if such information were deemed important to fulfill the Commission's oversight responsibilities under the NGA." Reh'g Order ¶ 15 (emphasis added). In effect, FERC argues that its understanding of the "purpose" of the Settlements takes precedence over their respective provisions. Not so. *See Ameren Servs Co.*, 330 F.3d at 498. Both Settlements unambiguously define Dominion's reporting obligations. *See supra* note 3; 2005 Settlement § 4.3 (incorporating 2001 Settlement's reporting requirement). The plain language of the Settlements—which provides for a 16-item Fuel Report—cannot be overridden by a purported "purpose and intent" that would significantly alter that language.

Finally, FERC argues that the *Mobile-Sierra* doctrine is inapplicable because the 2005 Settlement provides that it " 'shall not . . . preclude the Commission from initiating an NGA section 5 proceeding *on its own volition*.' " Reh'g Order ¶ 17 (quoting 2005 Settlement § 4.6) (emphasis added). As we noted earlier, section 5, in relevant part, authorizes FERC to establish "just and reasonable" rules and regulations relating to the rates and charges "collected by any natural-gas company in connection with any transportation or sale of natural gas." 15 U.S.C. § 717d(a). Because the 2005 Settlement expressly allows for a section 5 proceeding on FERC's initiation, FERC argues, it need ensure only that the additional disclosure requirements are "just and reasonable," *see id.*, which, as previously noted, is less

demanding than *Mobile-Sierra. See* discussion *supra* page 13.[15] This argument too is without merit. Under section 5, FERC initiates a proceeding either " [1] *upon its own motion* or [2] *upon complaint of any . . . gas distributing company*." 15 U.S.C. § 717d(a) (emphases added). But section 4.6 of the 2005 Settlement refers only to FERC's authority to bring a section 5 action only "*on its own volition*." 2005 Settlement § 4.6 (emphasis added). As FERC acknowledges, the Conditions Order issued at the behest of KeySpan. *See* Conditions Order ¶ 11 ("Although Dominion has complied with the specific informational requirements of the [Settlement Agreements], *granting KeySpan's request* for more detailed information in Dominion's Fuel Reports would enhance the transparency of Dominion's transactions, and assure all parties and the Commission that there is no cost-shifting or subsidization on Dominion's system." (emphasis added)). FERC argues that it did not run afoul of the "on its own volition" clause because it acted "upon Dominion's customers' *comments*, distinguishable from [their] *complaints*." FERC Br. 31 (emphases added).[16] In other words, FERC apparently interprets section 4.6 as allowing the settling parties to petition FERC for modification of the 2005

---

[15]The 2001 Settlement does not contain a comparable "on its own volition" clause.

[16]FERC claims that it has previously interpreted similar language not to limit its authority to modify a contract under section 5. *See* FERC Br. 31. The two cases FERC highlights are distinguishable. The first, *Columbia Gas Transmission Corp.*, 79 F.E.R.C. ¶ 61,044, at 61,203 (1997), interprets a contract that does not contain the "on its own volition" language, and the second, *CNG Transmission Corp.*, 85 F.E.R.C. ¶ 61,261, at 62,054 (1998), clarifies only that the clause does "not limit the Commission's authority to take future action under Section 5 of the NGA . . . as a result of [a] rulemaking proceeding[]."

Settlement—without triggering the *Mobile-Sierra* presumption—so long as they proceed informally.[17]

The parties agree that there is at least some ambiguity in the meaning of the "on its own volition" clause, *see* Dominion Br. 33–34 ("Whatever th[e] provision might mean, it is not applicable to the Commission's Orders in this case. Indeed, this clause equally could be read to confirm the Commission retains the right to modify the settlement agreement when the public interest so requires, in accord with the *Mobile-Sierra* doctrine."); FERC Br. 32-33 (arguing for ambiguity). We turn, therefore, to step two of the *Chevron* analysis to determine whether FERC's interpretation of the clause to allow regulation in response to customer *comments*, but not *complaints*, is a reasonable interpretation. *See Ameren Servs.*, 330 F.3d at 498-99. We think not. FERC's interpretation of section 4.6 would effectively void other provisions of the 2005 Settlement that prohibit the settling parties from "initiat[ing] or support[ing]" modification of the 2005 Settlement through a section 5 action. *See, e.g.*, 2005 Settlement §§ 4.2(a) ("[N]o Settling Party shall initiate or support a proceeding under NGA Section 5 that would cause a change in [Dominion's] generally applicable transportation or storage rates . . . ."), 4.5 (parties prohibited from "initiating a proceeding under Section 5 of the NGA . . . [to seek] a result inconsistent with any other provisions established . . . by this Settlement"). In addition, FERC has previously declared that, in interpreting a settlement, "no word in a contract (or settlement) is to be treated as surplusage or redundant if any

---

[17]Neither the Conditions Order nor the Rehearing Order discusses the scope of the clause. *See* Condition Order § 3 (not discussing "on its own volition" language); Reh'g Order ¶ 16 (quoting section 4.6 of the 2005 Settlement but not discussing "on its own volition" language).

reasonable meaning, consistent with the other parts, can be given to it." *Pac. Gas. Transmission Co.*, 73 F.E.R.C. ¶ 61, 276, at 61,760 (1995); *accord Grynberg v. FERC*, 71 F.3d 413, 416 (D.C. Cir. 1995).

*D. NGA Section 10*

Finally, FERC argues that the Conditions Order is a legitimate exercise of its authority under section 10 of the NGA, 15 U.S.C. § 717i. Under section 10, FERC may require a regulated natural gas company to supply informational reports that FERC deems necessary to carry out its regulatory duties.[18] But the Conditions Order makes no mention of section 10; instead, it declares that FERC is acting under its section 5 authority. *See* Conditions Order ¶ 12 ("We find, therefore, that under section 5 of the NGA, [the 2005 Settlement] is unjust and unreasonable . . . ."). Similarly, the Rehearing Order repeatedly affirms that FERC is acting under section 5. *See, e.g.*, Reh'g Order ¶ 6 ("The Commission found that under section 5 of the NGA, [the 2005 Settlement] was unjust and unreasonable . . . ."), ¶ 21 ("The Commission made the requisite section 5 findings . . . ."). The first and only mention of section

---

[18]Section 10(a) provides, in relevant part:

Every natural-gas company shall file with the Commission such annual and other periodic or special reports as the Commission may by rules and regulations or order prescribe as necessary or appropriate to assist the Commission in the proper administration of this chapter. The Commission may prescribe the manner and form in which such reports shall be made, and require from such natural-gas companies specific answers to all questions upon which the Commission may need information.

15 U.S.C. § 717i(a).

10 is FERC's observation—unsupported by any explanation or analysis—at the close of the Rehearing Order. *See id.* ¶ 21 ("The Commission . . . is granted express authority under section 10 of the NGA to require reports."). This does not suffice. *See Mo. Pub. Serv. Comm'n v. FERC*, 234 F.3d 36, 41 (D.C. Cir. 2000) ("A passing reference . . . is not sufficient to satisfy the Commission's obligation to carry out reasoned and principled decisionmaking. We have repeatedly required the Commission to fully articulate the basis for its decision." (quotations omitted)); *Great Lakes Gas Transmission Ltd. P'ship v. FERC*, 984 F.2d 426, 432 (D.C. Cir. 1993) ("By requiring the Commission to explain its decisions fully and rationally, we can be confident that missing facts, gross flaws in agency reasoning, and statutorily irrelevant or prohibited policy judgments will come to a reviewing court's attention." (quotation omitted)); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1942) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.").

For the foregoing reasons, we grant Dominion's petition and vacate FERC's Conditions Order, 113 F.E.R.C. ¶ 61,302 (Dec. 21, 2005).

*So ordered.*